UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY CLAUDE STAINS,<br>Plaintiff | ) ) ) | CIVIL ACTION NO. 4:20-CV-1762 |
| v. | ) ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1]<br>Defendant | ) ) ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Barry Claude Stains, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final

---

[1]Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

decision is not supported by substantial evidence. Accordingly, for the reasons stated herein the Commissioner's final decision is VACATED and this case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to conduct a new administrative hearing.

## II.    BACKGROUND & PROCEDURAL HISTORY

On January 31, 2017, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15). In this application, Plaintiff alleged he became disabled as of October 31, 2011. *Id.* Plaintiff later amended his alleged onset date to May 18, 2015. *Id.* As of his amended alleged onset date, Plaintiff was fifty years old.[2] He alleges he us unable to work due to the following conditions: type 2 diabetes, osteoarthritis in the hips, arms and feet, hypertension, and nerve issues in the right arm. (Admin. Tr. 61). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, and use his hands. (Admin. Tr. 243). Plaintiff graduated from high school in 1983 and participated in the regular education program. (Admin. Tr. 228). Before the onset of his impairments, Plaintiff

---

[2] When a claimant is under fifty years old, age is not generally considered to seriously affect his or her ability to adjust to other work. 20 C.F.R. § 404.1563(c). Once a claimant reaches age fifty, however, "age along with a severe impairment(s) and limited work experience may seriously affect [a claimant's] ability to adjust to other work." 20 C.F.R. § 404.1563(d).

worked as an operator and laborer for the U.S. Army Corps of Engineers, a welder for L-3 Communication, and an EQ operator for Kinsey Co. (Admin. Tr. 273).

On April 12, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15). On April 19, 2017, Plaintiff requested an administrative hearing. *Id.*

On April 3, 2019, Plaintiff, assisted by his counsel, appeared, and testified during a hearing before Administrative Law Judge Nelisbeth Ball (the "ALJ"). (Admin. Tr. 26). On April 17, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. *Id.* On June 6, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 302-304). On July 23 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On September 25, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court reverse the decision of the Commissioner, and order an award of benefits, or, in the alternative, to order a remand for a proper determination before a new ALJ. *Id.*

On March 23, 2021, the Commissioner filed an Answer. (Doc. 13). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 15), the Commissioner's Brief (Doc. 16), and Plaintiff's Reply (Doc. 17) have been filed. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A.   Substantial Evidence Review – the Role of This Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

    B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

---

[3] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on April 17, 2019.

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.

Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following arguments in his statement of errors:

(1)    Whether the ALJ's RFC assessment is not supported by substantial evidence because it exceeds the limitations of the only medical opinion of record. (Doc. 15, p. 6).

(2)    Whether the ALJ's failure to identify or resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") led to an erroneous conclusion that the jobs identified at step five do not conflict with the DOT. *Id.*

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her April 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2015. (Admin. Tr. 17). Then, Plaintiff's application was evaluated at steps one through step five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 18, 2015 (Plaintiff's alleged onset date) and December 31, 2015 (Plaintiff's date last insured) ("the relevant period"). *Id.*

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: complex regional pain syndrome, brachial plexopathy, status post rotator cuff tear, status post left infraclavicular brachial plexus exploration and neurolysis of the posterior chord and axillary nerve, status post femur fracture, status post total knee arthroplasty, osteoarthritis, diabetes mellitus, hypertension, and obesity. *Id.* The ALJ also identified several medically determinable non-severe, and non-medically determinable impairments. The ALJ found that the following impairments were medically determinable but non-severe: dyslipidemia, carpal tunnel syndrome, peripheral neuropathy, osteoarthritis and gout. (Admin. Tr. 18). The ALJ found that Plaintiff's traumatic brain injury was not medically determinable. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> [T]he claimant can never climb ladders, ropes, or scaffolds and never crawl. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can never be exposed to hazards such as dangerous moving machinery and unprotected heights and never be exposed to extreme cold. The claimant can engage in occasional reaching with left non-dominant upper extremity and engage in occasional handling with left non dominant hand.

(Admin. Tr. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 24).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id.* To support her conclusion, the ALJ relied on testimony given by a vocational expert ("VE") during Plaintiff's administrative hearing and cited the following three (3) representative occupations: sorter, DOT# 222.687.014, order caller, DOT# 209.667-014, and ticket taker, DOT# 344.667-010. (Admin. Tr. 25).

B. WHETHER THE ALJ'S RFC ASSESSMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE IT EXCEEDS THE LIMITATIONS OF THE ONLY MEDICAL OPINION OF RECORD

On October 31, 2011, a tree branch fell on Plaintiff's left shoulder while he was working cutting trees. The accident caused a severe dislocation, and Plaintiff

underwent surgical repair of 4 tendons around the rotator cuff, as well as the biceps tendon. (Admin. Tr. 458).

On March 7, 2012, a physical therapist wrote the following progress report summary in a treatment record:

> Client is making progress but it is slow and in small increments that has not added up yet to significant functional improvement. We are working hard on scapula strength and getting what we can get out of his rot cuff. PROM is decent. He is able to do some work at bench ht and doing light carrying. Sharp pain that he gets with exercise does not last long. Will continue to progress as tol.

(Admin. Tr. 564). An April 4, 2012, treatment note from the physical therapist states "Client saw Dr Armstrong on Monday and he is getting NCV and MRI on 5/9. She suspects axillary nerve issue. He is going to continue with [home exercise plan] at this time until testing and follow up." (Admin. Tr. 567).

The ALJ considered the March 7, 2012 treatment note as a medical opinion, and gave it "great" weight. In doing so, the ALJ explained:

> The undersigned has considered the opinion that the claimant can engage in light lifting (Exhibit 9F). This opinion is given great weight. It is well supported by exercises that the therapist conducted with the claimant and medical evidence of record discussed above. Moreover, the therapist is a treatment provider. It is consistent with the claimant's robust activities of daily living.

(Admin. Tr. 23).

On August 7, 2012, in a discharge summary following a second surgical procedure on Plaintiff's left shoulder, a physician noted that Plaintiff should not

engage in "[n]o heavy lifting until seen back in the clinic and cleared by Dr. Harbaugh." (Admin. Tr. 497). On September 4, 2012, during a follow-up examination, Dr. Harbaugh cleared Plaintiff to "increase his activity steadily over time." (Admin. Tr. 489).

In her decision, the ALJ considered the statement made in the August 7, 2012 discharge summary as a medical opinion that Plaintiff should avoid heavy lifting and gave it "partial" weight. In doing so, the ALJ explained:

> The undersigned has considered the opinion that the claimant can conduct no heavy lifting (Exhibit 5F). This opinion is given partial weight. It was secondary to a surgery and not meant as a long term description of functioning. However, it is consistent with the claimant's reports and his injury to his shoulder as discussed above.

(Admin. Tr. 23).

On April 12, 2017, as part of the initial review of Plaintiff's application, state agency medical evaluator Diane Fox, M.D. assessed that there was insufficient evidence to assess RFC prior to Plaintiff's date last insured. (Admin. Tr. 63).

The ALJ gave Dr. Fox's opinion "little" weight. In doing so, she explained:

> To the extent that her comment "insufficient evidence" is an opinion, it is given little weight. The claimant's shoulder injury was exhaustively documented in the records from Milton Hershey Medical Facility (Exhibit 1F and 2F).

(Admin. Tr. 22).

Plaintiff was referred to physical therapy to address cervical radiculopathy, headaches, and shoulder pain. (Admin. Tr. 657). On October 25, 2017, a physical therapist noted under the heading "Prior Level of Function":

> no active use of L shoulder since accident, able to use elbow and wrist/hand on L for ADLs and other activities however with pain. Attempts to stay active with outdoor activities as able.

(Admin. Tr. 658). In the same treatment note, a physical therapist wrote under the heading "Current Level of Function":

> No use of left shoulder, limited use of L elbow/wrist and pain with any L UE movement. Minor relief with pt hanging L UE in a small rope type of homemade sling. PT reports he does more than he probably should staying active with farming and other outdoor activities.

*Id.*

The ALJ treated this assessment in the October 2017 treatment record as opinion evidence, and gave the statement "less" weight. In doing so, the ALJ explained:

> The undersigned has considered the opinion of physical therapists that the claimant has no use of his left arm (Exhibit 10F). This opinion is given less weight. It is inconsistent with the reports of the claimant that he engage in heavy farm work and that he can maintain his personal hygiene including dressing. The opinion is inconsistent with physical examinations from the physical therapists which noted that the claimant had diminished but present functionality in his left shoulder as discussed herein.

(Admin. Tr. 23-24).

On August 28, 2018, treating neurologist Stanton Sollenberger, D.O. completed a check-box type medical source statement. (Admin. Tr. 718-722). As of that date, Dr. Sollenberger had treated Plaintiff since September 2017. Dr. Sollenberger listed Plaintiff's diagnoses as complex regional pain syndrome and brachial plexopathy. *Id.* Dr. Sollenberger assessed that Plaintiff could: never lift or carry because he had little to no use of his arm/shoulder/hand on the left and suffers from chronic pain in both upper extremities; sit less than one hour per eight hour workday; stand/walk less than one hour per eight hour workday; frequently use foot controls; occasionally use his right arm and hand to reach, handle, finger, feel, push and pull; occasionally rotate his head and neck; rarely stoop, kneel, and crouch; never use his left arm or hand; and never climb stairs, climb ramps, climb ladders, balance, or crawl. *Id.* Dr. Sollenberger also assessed that Plaintiff would be off task more than 25% of the workday, could not maintain attention for more than fifteen minutes, would be absent four or more times per month due to his impairments or treatment, would need to be permitted to sit or stand at will, and would need to recline at will. *Id.* He also assessed that Plaintiff needed to avoid all exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. *Id.* On the cover page of the medical source statement, Dr. Sollenberger wrote:

> Form filled out—however if you want a true physical capacities evaluation—these can be performed in the outpatient department of

Chambersburg Hospital—occupational therapy. I do not believe patient would be a good candidate for these maneuvers due to his complex regional pain syndrome. This injury was 4 years prior to my seeing him.

(Admin. Tr. 718).

The ALJ gave "little" weight to Dr. Sollenberger's opinion. In doing so, the ALJ explained:

> Taking this opinion to its logical conclusion, the claimant must lie down for more than five hours per workday as he can only sit, stand, and walk for an hour. This opinion is given little weight. While the doctor is a treating source, he has vastly overstated the claimant's limitations. The claimant did not report this level of dysfunction in his function report. The doctor's attention and concentration limitations secondary to pain are inconsistent with the function report of the claimant. The limitation to frequent operation of a vehicle is internally inconsistent with the limitation of less than 15 minutes of concentration and one hour of sitting limitations. The limitations on walking, sitting, standing and postural maneuvering are all inconsistent with the claimant's successful treatment with physical therapy in 2017 (Exhibit 10F). They are also vastly inconsistent with the claimant's heavy and strenuous farm work and woodcutting. The opinion is inconsistent with the Dr. Sollenberger's own physical examination, which showed normal range of motion in the extremities, normal alertness, and normal gait, posture, and coordination (Exhibit 11F). The limitation on foot controls is unsupported within the record. Indeed, other than closing the door, the claimant reported no dysfunction in operating a motor vehicle; thus the limitation on foot control is overstated. The limitation on pulmonary irritants and extreme heat are unsupported and inconsistent with the medical evidence of record, which shows no limitation in this regard (Exhibit 11F).

(Admin. Tr. 23).

      1.    Whether the Statements by Dr. Fox and the Physical Therapists are Medical Opinions

Plaintiff argues:

There is one medical opinion of record: that of Dr. Sollenberger, Stains's treating physician. While there are other opinions of record, they are not "medical opinions". The Commissioner's regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The state agency medical consultant indicated that there was "insufficient evidence to assess RFC prior to DLI 12/31/15". (Tr. 63). Because the medical consultant did not opine on Stains's functional limitations, this is not a medical opinion.

There were also several opinions of physical therapists considered (Tr. 23); however, physical therapists are not acceptable medical sources. 20 C.F.R. § 404.1502. Thus, opinions of physical therapists are not "medical opinions" pursuant to 20 C.F.R. § 404.1527(1).

(Doc. 15, pp. 6-7).

The Commissioner does not appear to dispute that a physical therapist is not an acceptable medical source, or that the discounted assessment by Dr. Fox is not a medical opinion.

The regulations applicable to Plaintiff's application define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Acceptable medical sources" are defined as a licensed physician, licensed psychologist, licensed optometrist (for vision issues only), a licensed podiatrist (foot and ankle impairments only), or a qualified speech-

language pathologist (speech and language impairments only). 20 C.F.R. § 404.1502. Based on these definitions, and because there appears to be no dispute on the issue, I find that the statements by the physical therapists and Dr. Fox are not medical opinions as defined in 20 C.F.R. § 404.1527(a)(1).

> 2. Whether the ALJ's RFC Assessment is Supported by Substantial Evidence Where the Only Medical Opinion Was Given "Little" Weight

Plaintiff argues:

> Accordingly, there is one medical opinion of record: that of Dr. Sollenberger, Stains's treating physician. (Tr. 719-722). This opinion is uncontroverted as no other medical opinion contradicts this opinion. As Dr. Sollenberger's opinion is the only medical opinion of record, the ALJ erred in rejecting this opinion. The ALJ erroneously relied upon lay reinterpretation of the evidence and substituted her opinion for that of a medical one.

> To state this another way, remand is required as the ALJ's residual functional capacity assessment exceeds the limitations of all medical opinions of record.

(Doc. 15, pp. 6-7).

In response, the Commissioner argues that the ALJ was not required to adopt a medical opinion to support the RFC assessment (Doc. 16, pp. 10-15), and that the RFC is supported by substantial evidence because:

> the ALJ drew reasonable inferences from the relevant evidence when determining that Plaintiff could perform a modified range of light work, explaining that Dr. Sollenberger's check-box opinion was given little weight because it "vastly overstated" Plaintiff's limitations and was "vastly inconsistent" with Plaintiff's heavy and strenuous farm work

and woodcutting as well as inconsistent with Dr. Sollenberger's own notes from his physical examinations of Plaintiff (Tr. 23).

(Doc. 16, p. 10).

There is no dispute that it is the ALJ's duty to assess a claimant's RFC. 20 C.F.R. § 404.1546(c). Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him."). Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *McKean v. Colvin,* 150 F. Supp.3d 406, 418 (M.D. Pa, 2015).

I am not, however, persuaded that the RFC assessment in this case is supported by substantial evidence. The relevant period in this case is a period of less than seven months—from May 18, 2015 through December 31, 2015. In March 2013, Dr. Harbaugh noted that Plaintiff had no insurance. (Admin. Tr. 486). She also noted that, at that point there was "no other role for surgical intervention from the standpoint of the nerves," and recommended Plaintiff follow up with an orthopedic surgeon. *Id.* In October 2013, Plaintiff followed up with an orthopedic surgeon, April Armstrong. In the treatment note, Dr. Armstrong wrote:

> What he describes to me is that he is having a burning sensation in his arm and it is in the middle deltoid region. He also has numbness along the lateral aspect of his arm as well. He describes that functionally, he is able to do things with 30 or 40 pounds with his arms brace down by his waist and has good elbow function and occasionally, he will also use his arm as a pendulum and get it up overhead and brace set up against a wall and then use it above his head, and he really does not walk to lose that ability or that function. He also told he that he has looked up what a shoulder fusion would mean and he is not interested in it. He is a farmer and he does not feel that he would like to entertain a shoulder fusing as mentioned he likes to get his arm over his head on occasion and feels this is an important function for him. He does however wish that the burning sensation would get better for him.
>
> On examination, he has global atrophy of his entire deltoid and however he does have good elbow, wrist, and hand function. It is difficult to assess rotator cuff because he is also significantly weak in the shoulder. He did not have any repeat x-rays today, which I do not feel is necessary. It is seen he is not even at the stage, where he would consider shoulder fusion. I did talk him, however, possibly referring him on to the Pain Management Service to consider whether or not he would be a candidate for neurogenic medications such as Lyrica, Neurontin or gabapentin to help possibly with his burning discomfort. He said that he would like to discuss the meet with them regarding this, and if they

have any other considerations for his chronic pain situation. If he does not want to lose pendulum motion, then I really would not lean towards the shoulder fusion at this time. If however there is any concern in the future, he thinks he wants to reconsider this opinion. Then, I would be more happy to meet with him again. He would require repeat x-rays at the time on the next visit. I will discharge him from my care, but gain if he has anything that I can do to help, then I would be more happy to see him.

(Admin. Tr. 397).

In his decision, the ALJ noted that Plaintiff "avoided treatment and medication from October 2013 until November 2015." (Admin. Tr. 23). A November 19, 2015 treatment record states "Patient discontinued all medications due to no insurance." (Admin. Tr. 516). The treatment record does not document whether Plaintiff was experiencing pain in his left arm or shoulder, but Plaintiff did receive a cortisone injection in his left shoulder. (Admin. Tr. 518).

On July 8, 2016, Plaintiff reported that he "now has insurance," and sought treatment for uncontrolled type 2 diabetes. (Admin. Tr. 557). During an examination for diabetes treatment, Plaintiff reported that he "[w]orks outside on the farm everyday." The treatment record does not describe the nature of the "work" performed. On August 12, 2016, during a follow-up appointment for diabetes, Plaintiff reported that he is "[s]taying active as much as he can. He works outside doing farmwork. Does as much as he is able." (Admin. Tr. 583). On May 11, 2017, it was noted on physical examination that Plaintiff's range of motion in his left upper extremity was "severely restricted." (Admin. Tr. 762). Plaintiff reported that:

> he is having difficulty working on his farm, wanted to know if there is something he could do to have movement in left shoulder again. Visible loss of deltoid muscle present. He has multiple medical problems, he is disabled: He has uncontrolled Diabetes Mellitus Type II. Pt. has left Brachial Plexus tear which he had unsuccessful nerve transplant surgery for. He also has a Fractured left Hip and Femur.

(Admin. Tr. 763). During the same examination, Plaintiff reported that he injured his leg after he was kicked by a cow. *Id.* On October 25, 2017, it was noted on examination that Plaintiff had no flexion or abduction left shoulder and a 30 degree range of motion for external rotation of the left shoulder. (Admin. Tr 660). Plaintiff had full flexion and extension of the left elbow and wrist. *Id.* Plaintiff told physical therapists that specialists had concluded that Plaintiff had reached maximum recovery on the shoulder injury. (Admin. Tr. 658). In a November 20, 2017 physical therapy discharge summary, the physical therapist reported that Plaintiff "had difficulty maintaining reduced pain levels with daily participation in heavy activities including farm activities, cutting/splitting wood." (Admin. Tr. 643).

In this case, the ALJ essentially relies on three treatment records that reference "farm work" a general statement by a non-acceptable medical source that Plaintiff could increase activity as tolerated, and a statement by a surgeon that Plaintiff should not lift heavy objects after surgery to support the RFC assessment. This evidence is not substantial when viewed alone with statements by Plaintiff's treating source that Plaintiff has little mobility in his left arm, examination findings from multiple sources documenting that Plaintiff cannot flex or extend his left arm due to his

shoulder injury, observations by physicians that Plaintiff walks around with his arm in a sling, and statements from treating sources that (short of shoulder fusion and pain management) nothing can be done to improve Plaintiff's range of motion. Despite the overwhelming physical examination findings that Plaintiff had no range of motion on flexion or extension of the left shoulder, the ALJ concluded that Plaintiff could "occasionally" reach with his left arm. In this context, "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C. This conclusion is not supported by substantial evidence. *See Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence.").

C.   PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand, I need not address Plaintiff's remaining arguments. To the extent any further error exists, it may be addressed on remand.

V.   CONCLUSION

Accordingly, Plaintiff's request for relief is GRANTED as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be remanded to the Commissioner to fully develop the record and conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)     Final judgment should be issued in favor of Barry Claude Stains.

(4)     An appropriate Order will be issued.

Date: February 16, 2022                    BY THE COURT

                                           _s/William I. Arbuckle_
                                           William I. Arbuckle
                                           U.S. Magistrate Judge